UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CHACHERE, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 2401 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, DANIELLE DEERING, and CORY JUNIOUS, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael Chachere brought this suit against the City of Chicago and two of its police officers, Danielle Deering and Cory Junious, under 42 U.S.C. § 1983 and Illinois law, alleging that his home was unlawfully searched, that he was unlawfully detained on groundless charges, and that the personal property taken upon his arrest was unlawfully destroyed. Doc. 1. Defendants answered many of the claims, Doc. 13, but the City moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the property destruction claims, Doc. 14. The motion is granted.

**Background**

On a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Chachere's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as

1

favorably to Chachere as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On October 14, 2014, Deering and Junious conducted a warrantless search of Chachere's home. Doc. 1 at ¶¶ 5-7. Asserting that the search turned up guns and that Chachere confessed to owning them, the officers arrested him for unlawful possession of firearms. *Id*. at ¶¶ 8-9, 11. In fact, the officers had no reason to think any guns found were Chachere's, and they falsified the confession. *Id*. at ¶¶ 10, 11. As a result, Chachere spent over four months detained at the Cook County Jail on unfounded gun charges, which were ultimately dismissed. *Id*. at ¶¶ 12-13.

When Deering and Junious arrested and booked Chachere, they took and placed into storage his wallet, cell phone, and necklace. *Id*. at ¶ 21. The officers did so pursuant to Chicago Police Department Special Order S07-01-01, which sets forth procedures for inventorying, storing, and returning personal property taken from arrestees. Doc. 18 at 16-19. Adhering to that policy, the City did not send the wallet, cell phone, and necklace along with Chachere to the jail, but instead inventoried and stored them in the police department's "Evidence and Recovered Property Section." Doc. 1 at ¶¶ 17, 21; Doc. 18 at 3-4, 16.

To retrieve inventoried property, an arrestee has two options: (1) go to the police department in person; or (2) designate someone else to do so. Doc. 1 at ¶ 23; Doc. 18 at 4, 16. An arrestee detained at the jail of course cannot go to the department in person, and the City knew from experience that many detainees struggled to secure assistance from others to retrieve their property. Doc. 1 at ¶ 20. Nevertheless, the special order imposes a thirty-day limit on the retention of seized property, after which it may be destroyed. *Id*. at ¶ 19; Doc. 18 at 21.

2

Chachere was detained for more than four months after his arrest and was unable to find another person to claim his property. Doc. 1 at ¶¶ 12, 23; Doc. 18 at 4. As a result, his wallet, phone, and necklace were destroyed. Doc. 1 at ¶ 24. Although Chicago Municipal Code § 2-84-160(b) obligates the City to make reasonable efforts to give notice of the procedure for retrieving seized property, the City failed do so here. Doc. 18 at 5, 21.

## Discussion

Chachere's property destruction claim invokes the Fourth Amendment, the Fifth Amendment's Takings Clause, and the Fourteenth Amendment's Due Process Clause. Doc. 18 at 8-13.

### I. Fourth Amendment

Chachere alleges that the City's destruction of his personal property violated the Fourth Amendment. The Fourth Amendment prohibits "unreasonable … seizures." U.S. Const. amend. IV. A seizure of personal property occurs when there is "some meaningful interference with an individual's possessory interests in [his] property." *Lee v. City of Chicago*, 330 F.3d 456, 460 (7th Cir. 2003) (alteration in original). The initial seizure of Chachere's property upon his arrest was lawful. *See Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) ("At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed."). The question here is whether the City's subsequent destruction of his property violated the Fourth Amendment.

*Lee* answers this question, holding that the Fourth Amendment does not apply to the government's retention or treatment of property following its initial seizure: "Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The amendment then cannot be invoked by the

dispossessed owner to regain his property." 330 F.3d at 466. Chachere attempts to distinguish *Lee* on the ground that it involved property seized as evidence, Doc. 18 at 11, but nothing in *Lee* suggests that its holding is limited to seizures that have a law enforcement purpose. To the contrary, the Seventh Circuit has made clear that *Lee* applies no matter the justification (or lack thereof) for the initial seizure. *See Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 660 (7th Cir. 2012) ("*Lee*'s holding that a seizure occurs upon the initial act of dispossession does not depend on the legality of the seizure. Stated differently, continued retention of unlawfully seized property is not a separate Fourth Amendment wrong.").

As *Lee* explained, limiting the Fourth Amendment's scope to the initial property seizure is consistent with the Seventh Circuit's consistent rejection of the concept of a "continuing seizure." 330 F.3d at 463-65. The Seventh Circuit recently reaffirmed its position in *Bell v. City of Chicago*, 835 F.3d 736 (7th Cir. 2016), holding that the Fourth Amendment did not apply to the City's failure to return a seized vehicle because "the seizure … is complete when the officer or agent seizes and impounds the vehicle." *Id*. at 741. Chachere correctly observes that the Seventh Circuit's rejection of the "continuing seizure" theory is before the Supreme Court in *Manuel v. City of Joliet*, 136 S. Ct. 890 (2016). But unless and until the Supreme Court says otherwise, this court remains bound by circuit precedent. *See Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 495 (7th Cir. 1997) (en banc). Thus, at this juncture, the City's failure to return seized property must be evaluated under the Fifth and Fourteenth Amendments. *See Bell*, 835 F.3d at 741 ("[T]he Due Process Clause of the Fourteenth Amendment can be used to challenge post-seizure procedures and the City's continued retention of [the plaintiffs'] vehicle."); *Lee*, 330 F.3d at 466 (holding that "the Fifth and Fourteenth Amendments' texts, histories, and judicial interpretations can better aid a court in balancing the competing interests at stake"); *id*. at 466 n.5

("Other courts have likened continued retention of evidence as a taking without just compensation.").

## II.     Fifth Amendment Takings Clause

Chachere alleges that the destruction of his personal property amounts to a taking without just compensation in violation of the Fifth Amendment. The City contends that the takings claim should be dismissed as unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985), because Chachere has neither sought nor been denied compensation at the state level. Doc. 14 at 4.

In *Williamson County*, "the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010); *see also Gamble v. Eau Claire Cnty.*, 5 F.3d 285, 286 (7th Cir. 1993) ("[T]he landowner cannot complain that his constitutional right has been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the state."). Put another way, *Williamson County* provides that, "if a state provides adequate procedures for seeking just compensation, a property owner cannot state a takings claim in federal court until she has used these procedures and been denied just compensation." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016). This doctrine applies with equal force to claims based on takings of personal property. *See Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015).

Although he concedes that *Williamson County* applies to his takings claim and that he has not pursued relief at the state level, Chachere argues that his failure to do so should be excused

5

because any state suit would have been futile. Doc. 18 at 12. The *Williamson County* doctrine has a futility exception that applies if relief is "inadequate or unavailable" under state law. *Sorrentino*, 777 F.3d at 414. But the Seventh Circuit has held that Illinois law as a general matter provides remedies when detained persons are deprived of their personal property. *See id*. at 413 ("Even when no Illinois constitutional provision or statute provides a remedy for a particular taking, 'the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.'") (quoting *Roe v. Cook Cnty.*, 193 N.E. 472, 473 (Ill. 1934)); *see also Gates v. Towery*, 331 F. Supp. 2d 666, 672 & n.4 (N.D. Ill. 2004). Chachere counters that the Illinois courts are closed to him on the facts of this case, citing the state appellate court's treatment of two immunity statutes, 745 ILCS 10/2-201 and 745 ILCS 10/4-103, in *Black v. Dart*, 28 N.E.3d 884 (Ill. App. 2015). Doc. 18 at 13. According to Chachere, *Black* immunizes the City and its officers from any suit he might bring arising from his property's destruction.

To demonstrate *Williamson County* futility, a plaintiff must do more than conjure a chance, or even a likelihood, that the state judiciary would reject his claim. To the contrary, where, as here, the State offers an applicable cause of action, futility turns not on whether "the property owner is likely to *prevail*," but on whether the State has in fact "established … its refusal to pay just compensation." *SBG Fin. Servs., Inc. v. Consol. City of Indianapolis-Marion Cnty.*, 235 F.3d 1036, 1038 (7th Cir. 2000). Given this, a federal court faced with a *Williamson County* futility argument should not "guess what a state court is likely to do" with a claim it never had a chance to consider, unless it is quite clear that the state judiciary would close its doors to claims of its ilk. *Ibid*. In other words, in all but the exceptional case, "the proceeding belongs in state court even if the plaintiff is convinced that it will lose." *Id*. at 1039.

*Black* does not foreclose Chachere from seeking and obtaining relief in state court. *Black* affirmed a grant of immunity to the Cook County Sheriff in a suit concerning the failure to return a detainee's clothing upon his release from jail, but it did so on forfeiture or waiver grounds, because the plaintiff failed to argue the point on appeal, and not because the court agreed with the Sheriff on the merits of its immunity defense. 28 N.E.3d at 888 ("[T]he plaintiff failed to assert any challenge to the Sheriff's immunity defense throughout the proceedings below, and concededly forgoes any such argument on appeal."). It follows that *Black* does not establish that it would be futile for Chachere to seek relief in state court for the destruction of his property. On this point, the court finds persuasive, and adopts the analysis of, *Conyers v. City of Chicago*, 162 F. Supp. 3d 737, 741-44 (N.D. Ill. 2016).

Because Chachere was required to seek just compensation from the state judiciary, and because he has not shown that doing so would be futile, his takings claim is dismissed as unripe.

## III. Fourteenth Amendment Due Process Clause

Finally, Chachere alleges that the destruction of his property violated due process. Before it may turn to the merits, the court must address whether *Williamson County* applies to—and thus bars—this claim as well. As the Seventh Circuit has repeatedly held, *Williamson County* "applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004); *see also Black Earth*, 834 F.3d at 847 (same, procedural due process); *Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 453 n.5 (7th Cir. 2002) (same, substantive due process); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994) (same, procedural and substantive due process). So, the question here is whether Chachere's due process claim rests on the same facts as his takings claim.

7

*Black Earth* sets forth the governing analysis. The case concerned a prototypical land use dispute: activities at a slaughterhouse were disturbing its neighbors, which prompted the defendant village to tighten enforcement of municipal ordinances, deem the slaughterhouse a nuisance, and, ultimately, require it to relocate. 834 F.3d at 844-46. The village's actions jeopardized the slaughterhouse's financing from a local bank, the loss of which caused it to close. *Id*. at 846-47. So the slaughterhouse sued, alleging a procedural due process violation. *Ibid*. The claim implicated four distinct interests: "(1) a liberty interest in the occupation of slaughter; (2) a property interest in the non-conforming use; (3) the right to use the property for a slaughterhouse purpose; and (4) the plaintiff's interest in its financing agreement with [the local bank]." *Id*. at 848. To resolve the village's *Williamson County* defense, the Seventh Circuit had to determine which of those four claims "are really takings claims in disguise." *Id*. at 847. The first and fourth claims survived because they alleged deprivations of "interests independent of the property itself." *Id*. at 848. But the second and third claims, concerning use of the slaughterhouse's physical plant, were barred because they were "archetypal takings claims." *Ibid*.

Under *Black Earth*, then, *Williamson County* applies to due process claims whenever the alleged violations infringe interests in physical property of the sort for which the Takings Clause guarantees compensation. That rule applies here, given that the City's actions directly affected (by destroying) his physical property. *See Dewitt v. City of Greendale*, 599 F. App'x 588, 590-91 (7th Cir. 2015) (holding that the district court correctly dismissed due process claims as unripe under *Williamson County* where the plaintiff alleged that the city improperly demolished his modular home); *Greenfield Mills*, 361 F.3d at 961-62 (holding that *Williamson County* required dismissal of procedural due process claims where alleged procedural flaws during a

8

state agency's decision to dredge a pond allegedly caused the destruction of plaintiffs' property in a mudslide). It follows that Chachere's due process claim must be dismissed as unripe.

One could perhaps attempt to distinguish *Black Earth* and the Seventh Circuit's other *Williamson County* due process cases on the ground that they have involved real property, rather than personal effects. But Chachere makes no such argument here, and in fact has specifically asked the court to apply the rule of *Black Earth* to his due process claim. Doc. 25 at 1-2. He has accordingly forfeited, if not waived, any argument that *Black Earth* and its predecessors apply only to real property. *See United States v. Anglin*, __ F.3d __, 2017 WL 359666, at *9 (7th Cir. Jan. 25, 2017) ("A waived claim … is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

## Conclusion

For the foregoing reasons, the City's partial motion to dismiss is granted. Chachere's Fourth Amendment property destruction claim is dismissed with prejudice, as its flaw cannot be cured by repleading, while his takings and due process property destruction claims are dismissed as unripe.

January 26, 2017

United States District Judge