UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CHACHERE, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 2401 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, DANIELLE DEERING, and CORY JUNIOUS, | ) ) | |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM OPINION AND ORDER**

In this suit under 42 U.S.C. § 1983 and Illinois law against the City of Chicago and two of its police officers, Danielle Deering and Cory Junious, Michael Chachere alleges that his home was unlawfully searched, that he was unlawfully arrested, detained, and prosecuted on groundless charges, and that personal property seized upon his arrest was unlawfully destroyed. Doc. 1. The court has dismissed the property destruction claims. Docs. 39-40 (reported at 2017 WL 372306 (N.D. Ill. Jan. 26, 2017)). Defendants now move for summary judgment on the remaining claims. Doc. 67. The motion is granted in part and denied in part.

### Background

The following facts are set forth as favorably to Chachere as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

On October 14, 2014, Sheila Shannon, a real estate agent, contacted the police because she believed that intruders had entered a home, located at 7646 South Perry Avenue in Chicago, that she was responsible for selling. Doc. 71 at ¶¶ 12-13, 16. Officers Deering and Junious were

dispatched to investigate. *Id.* at ¶¶ 5-6. Upon arriving, they saw two people who matched a description of the intruders. *Id.* at ¶ 7. One of the individuals ran inside the house and shut the door. *Id.* at ¶ 8. The officers tried to follow him in, but the door was locked. *Ibid.*

At some point, Deering spoke with Shannon. *Id.* at ¶¶ 11-12, 19. The parties dispute the content and even the existence of the conversation. Defendants assert that Deering called Shannon after noticing her number on a "For Sale" sign outside the home and that Shannon gave the officers permission to search the home. *Ibid.* In support, Defendants cite Shannon's deposition testimony that she "authorized a search of the house." Doc. 69-3 at 8. Chachere asserts that because Shannon cannot recall having *received* a call from the police, no conversation occurred. Doc. 71 at ¶ 11. However, Shannon and the officers testified that they spoke, and Shannon testified that she called the police at some point on October 14, *id.* at ¶¶ 11, 19; Doc. 69-3 at 6, so the record establishes that a conversation did take place.

Chachere asserts that the officers, during their depositions, identified only the home's owner, and not Shannon, as the source of their consent to search the home. Doc. 71 at ¶¶ 11, 19. It is true that Junious mentioned only the home's owner as the source of the consent. *Id.* at pp. 227-228. But Deering testified that she spoke with Shannon, who told her (Deering) that she (Shannon) "wanted [the officers] to remove [any intruders] … ." *Id.* at p. 281. Deering's testimony favors Defendants, but it does no more than create a genuine dispute as to whether Shannon consented to a broad search of the home (as she testified) or merely told the officers to remove any intruders (as Deering testified). This dispute must be resolved in Chachere's favor, so for purposes of summary judgment, Shannon told Deering that the officers could enter the home to search for intruders, but did not give them permission to conduct a broader search.

2

The home's owner, in a call with Deering, also gave the officers permission to enter and remove any individuals who were inside. *Id*. at ¶¶ 20-21; *see id*. at pp. 278-279. Chachere asserts that the owner authorized the officers only to remove intruders, while Defendants assert that the officers were given "permission to investigate and to search the residence." *Id*. at ¶ 21. This dispute is resolved in Chachere's favor. Junious testified that he believed that the owner had consented to a search of her home, but that information was relayed to him by Deering. *Id*. at p. 228. And Deering testified that the owner had told her only that "she didn't want anyone in the house. If anyone was there … they needed to be removed from the house." Doc. 69-2 at 6. For purposes of summary judgment, then, the owner authorized the officers only to remove intruders from the home.

Some time later, the intruder who had entered the home came outside. Doc. 71 at ¶ 22; Doc. 77 at ¶ 6. He was detained along with the other individual the officers observed when they arrived. Doc. 77 at ¶¶ 6, 9. Both men stated that they lived at the home. *Id*. at ¶ 9. The officers then decided to enter the home without a search warrant. Doc. 71 at ¶ 26; Doc. 77 at ¶¶ 6-7.

Before entering, the officers learned that there might be guns in the home. Doc. 71 at ¶ 18. (That fact is supported by this testimony from Junious: "The way it was related to me from the phone calls was that no one was supposed to be there. And that—whoever is there, there might be guns in the house. So from that, we wanted to search the house." Doc. 69-1 at 12. Chachere provides no reason to doubt his testimony.) The officers also were told that Chachere was the only person permitted in the home. Doc. 71 at ¶ 17. (Citing the officers' testimony, Defendants assert that they were told that Chachere's girlfriend might be staying with him, but that there should not be any "young people staying at the residence." *Ibid*. Chachere counters with Shannon's testimony that she informed the police that "no one is supposed to be [in the

3

house] except the guy Michael." *Ibid*. (citing Doc. 71 at p. 42). On summary judgment, this dispute is resolved in Chachere's favor.)

Upon entering the home, which has four bedrooms and is "pretty big," the officers conducted an initial search to see if anybody was present. *Id*. at ¶ 26; Doc. 77 at ¶¶ 11, 25-26. "[A]fter determining no one else was in the home," they conducted a broader search for evidence of a crime. Doc. 71 at ¶¶ 26-27. During that search, the officers found two firearms. *Id*. at ¶ 28. They also found ammunition in an upstairs bedroom, spent casings and a bulletproof vest in the basement, and mail linking Chachere to the residence. *Id*. at ¶¶ 29-30.

Chachere returned home after the searches had been completed. *Id*. at ¶ 31. He provided the officers with his identification, which listed his as 7646 South Perry Avenue. *Id*. at ¶¶ 32-33. Chachere told the officers that the two detained individuals were his girlfriend's children and that they lived at the home. Doc. 77 at ¶ 10. One of the officers ran Chachere's name and learned he was a convicted felon. Doc. 71 at ¶ 34.

The officers arrested Chachere because, as a convicted felon, he could not legally possess firearms. *Id*. at ¶ 38. The officers then "created official police reports containing the false claims that [Chachere] 'spontaneously uttered upon his arrival "I'm a security guard and the guns are mine,"' that [Chachere] was given Miranda warnings, and that [Chachere] then stated again, 'I'm a security guard and the guns are mine.'" Doc. 77 at ¶ 15. Chachere did not, in fact, say those things. *Id*. at ¶¶ 13-15.

Chachere was charged with two counts of being an armed habitual criminal and three counts of unlawful use of a weapon. Doc. 71 at ¶ 39. He spent some four months in pretrial detention at Cook County Jail. Doc. 77 at ¶ 30. The state trial court granted Chachere's motion to quash and suppress evidence on the ground that any exigent circumstances that could have

4

justified the officers' warrantless search of the home had dissipated by the time they entered. Doc. 71 at ¶ 39. The prosecutor dismissed the criminal charges *nolle prosequi* in March 2015, at which point Chachere was released. *Id*. at ¶ 42.

## Discussion

Chachere alleges that the officers violated his Fourth Amendment rights by searching his home without a warrant and by arresting and detaining him without probable cause, that they violated the Fourteenth Amendment's due process clause by fabricating evidence, and that they committed the state law tort of malicious prosecution.

### I. The Search of Chachere's Home

Chachere alleges that the officers violated the Fourth Amendment by conducting a warrantless search of his home. "It is axiomatic that the physical entry of the home is the chief evil against which the … Fourth Amendment is directed. And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Welsh v. Wisconsin,* 466 U.S. 740, 748 (1984)). Outside a few "specifically established and well-delineated exceptions," a warrantless search of a person's home is "*per se* unreasonable." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal quotation marks omitted).

Defendants argue that the search was justified under two such exceptions: exigent circumstances and consent. Doc. 68 at 5. Defendants argue in the alternative that even if they violated the Fourth Amendment, they are entitled to qualified immunity because, at the time the search occurred, it was not "clearly established" that the search was unlawful. *Id*. at 11-12.

#### A. Exigent Circumstances

The "exigent circumstances exception … allows for a warrantless entry into a home when there is a pressing need for the police to enter but insufficient time to secure a warrant." *United*

5

*States v. Tepiew*, 859 F.3d 452, 456 (7th Cir. 2017) (internal quotation marks omitted). Examples of exigent circumstances include the need to "protect or preserve life or prevent serious injury," *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007), to prevent the "imminent destruction of evidence," and "'hot pursuit' of a fleeing suspect," *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "[A] police officer's subjective belief that exigent circumstances exist is insufficient to justify a warrantless search." *Bogan v. City of Chicago*, 644 F.3d 563, 571 (7th Cir. 2011) (internal quotation marks omitted). Rather, "[w]hen reviewing a warrantless search to determine if exigent circumstances existed, [a court] conducts an objective review, analyzing whether the government met its burden to demonstrate that a reasonable officer had a reasonable belief that there was a compelling need to act and no time to obtain a warrant." *United States v. Andrews,* 442 F.3d 996, 1000 (7th Cir. 2006) (internal quotation marks omitted). The review must be based on "the totality of facts and circumstances as they would have appeared to a reasonable person in the position of the … officer—seeing what he saw, hearing what he heard." *Bogan*, 664 F.3d at 571-72 (internal quotation marks and emphasis omitted).

Defendants argue that exigent circumstances justified their warrantless search because the officers did not know if there were any victims, or any remaining intruders, in the home, and also because they were aware that there might be guns in the home and could reasonably have felt "a compelling need to investigate to determine what had happened" when one of the suspected intruders locked himself inside. Doc. 68 at 6. True enough, the officers' *initial* search of the home for victims or additional intruders may have been justified by exigent circumstances. *See United States v. Ross*, 565 F. App'x 505, 509 (7th Cir. 2013) (noting that "[e]xigent circumstances exist … when … there is a need to render emergency assistance to an injured

6

occupant or to protect an occupant from imminent injury," and also when "officers fear that a gun may be fired at them or others from within [a] dwelling"). But after that search turned up no victims or other intruders, the exigency passed, which means that the officers' *subsequent* search for guns or other evidence of a crime was unjustified by any exigency. *See Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (holding that there were no exigent circumstances justifying the officers' search of an apartment to "gather evidence" after they had determined that there no longer were any potential suspects or victims present, adding that there was "no indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant"); *United States v. Robles*, 37 F.3d 1260, 1264 (7th Cir. 1994) (explaining that although exigent circumstances justified the officers' warrantless entry of a residence, those circumstances "only permitted their entry and securing of the residence," adding that "once this was complete[,] any threat of evidence being destroyed was eliminated," and thus a "subsequent search or seizure [would have to be] justified by a warrant or an exception to the warrant requirement"); *United States v. Rivera*, 825 F.2d 152, 157 (7th Cir. 1987) ("Once a room is legally entered under exigent circumstances, a subsequent search or seizure of items in the room must be justified by a warrant or an exception to the warrant requirement.").

A mere desire to uncover and preserve evidence of a crime—where, as here, there is no indication that the evidence was in danger of being destroyed—does not give rise to exigent circumstances. *See Jacobs v. City of Chicago*, 215 F.3d 758, 769-70 (7th Cir. 2000) (noting that "[s]pecific facts indicating that evidence is likely to be destroyed must be present in order for exigent circumstances to exist," and denying dismissal of an unlawful search claim where there were "as yet no facts on the record that would support a reasonable officer's conclusion that evidence of a crime was in imminent danger of being destroyed … at the time [officers] …

conducted [a] search"). This is so even where the evidence consists of firearms. *See Ross*, 565 F. App'x at 510 n.3 ("We are troubled by the idea that exigent circumstances exist simply because law enforcement officers have probable cause to believe a person has a firearm in his home—a right guaranteed by the Constitution."). It follows from these precedents that exigent circumstances did not justify the officers' subsequent search of the home for firearms or other evidence of crime.

The officers' invocation of qualified immunity fails as well. To establish that a defendant violated a clearly established right, "a case directly on point is not required"; rather, the court need only identify "existing precedent" that, at the time of the alleged violation, had "placed the statutory or constitutional question beyond debate." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (internal quotation marks omitted); *see also Forman v. Richmond Police Dep't*, 104 F.3d 950, 957-58 (7th Cir. 1997) ("To demonstrate that a right is clearly established, [a plaintiff] need not show that the very action in question was previously held unlawful … or that a prior case is on all fours with the facts and the law in their case. Instead, closely analogous cases, those decided before the defendants acted or failed to act, are required … .") (internal quotation marks omitted). Here, in light of *Mincey*, *Robles*, and *Jacobs*, the inapplicability of the exigent circumstances exception to the officers' subsequent search of the home was clearly established in October 2014, when the search occurred. *See McAllister v. Price*, 615 F.3d 877, 885 (7th Cir. 2010) (affirming the denial of summary judgment where governing precedent did not "involve the same scenario at issue [in the case] … [but did] suggest that the [defendant] should have been on notice that elements of his conduct could violate [the plaintiff's] constitutional rights").

B.  Consent

"A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search." *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008).  However, a "[c]onsensual search is reasonable under the Fourth Amendment [only] so long as it remains within the scope of consent."  *United States v. Jackson*, 598 F.3d 340, 348 (7th Cir. 2010).  "The standard for measuring the scope of consent under the Fourth Amendment is one of objective reasonableness and asks what the typical reasonable person would have understood by the exchange between the law enforcement agent and the person who gives consent." *Ibid.*  This scope principle ensures that law enforcement officials cannot "obtain someone's consent to search by misrepresenting that they intend to look only for certain specified items and subsequently use that consent to justify a general exploratory search." *Ibid*.

Chachere argues that because the home's owner and Shannon gave the officers consent only to remove intruders, the consent extended only to the "initial search to determine that no one else was in the home."  Doc. 72 at 9.  He is correct, at least on summary judgment.  As set forth above, the summary judgment record, viewed with all genuine disputes resolved in Chachere's favor, shows that Shannon and the home's owner authorized the officers only to remove intruders from the home, not to conduct a broader search for guns or other evidence of crime.  It follows that the officers' subsequent, broader search of the home, which was conducted only for the latter purpose, fell outside the scope of the consent they had received.  *See United States v. Rahman*, 805 F.3d 822, 831-34 (7th Cir. 2015) (holding that consent to search a basement "to determine the origin and cause of [a] fire" did not "encompass a search for secondary and circumstantial evidence of arson," and noting that "any evidence collected … after [an officer] reached his conclusion about the origin of the fire … should have been

9

excluded"); *United States v. Dichiarinte*, 445 F.2d 126, 128-30 (7th Cir. 1971) (holding that the officers exceeded the scope of the defendant's consent to search his home for narcotics where they searched for and seized currency exchange receipts and other documents, reasoning that the officers went "beyond what was necessary to determine whether defendant had hidden narcotics among his personal papers" by "read[ing] through those papers to determine whether they gave any hint that defendant was engaged in criminal activity"). A reasonable jury thus could find that the officers lacked consent to conduct the search during which the firearms were found.

The officers' invocation of qualified immunity fails. Pre-October 2014 precedent clearly established that the permissible reach of a warrantless search is bounded by the scope of the consent given and received. *See Jackson*, 598 F.3d at 348 ("Law enforcement agents may not obtain someone's consent to search by misrepresenting that they intend to look only for certain specified items and subsequently use that consent to justify a general exploratory search."); *Michael C. v. Gresbach*, 526 F.3d 1008, 1015 (7th Cir. 2008) (noting that the scope of consent is limited by the breadth of actual consent, and holding that it was unreasonable for the defendant to believe the consent received to interview children "included consent to conduct a search of the children's bodies"). Indeed, the Seventh Circuit's 1971 decision in *Dichiarinte* is essentially on all fours with this case. Just as the officer in *Dichiarinte* was given consent to search only for narcotics in the defendant's home, the officers here were given consent only to enter the home to search for and remove intruders. And as in *Dichiarinte*, the officers' eyes began to wander once they entered the home, and they commenced a broader, unlawful search outside the scope of the consent they had received. *Dichiarinte* thus clearly established that the officers' subsequent, broader search of the home to look for evidence that "gave any hint that [someone in the home] was engaged in criminal activity" was unlawful. 445 F.2d at 130.

It bears mention that under the plain view doctrine, if while "acting within the parameters of [Chachere's] consent [the officers] had come upon contraband, fruits or instrumentalities of crime, or clear evidence of criminal behavior which was lying in plain view, they could have seized those items." *Id*. at 130. But the record does not suggest that the firearms recovered from the home were in plain view when the officers conducted their initial sweep to determine if any victims or additional intruders were in the home.

## II.   Chachere's Arrest

In seeking summary judgment on Chachere's false arrest claim, the officers argue that no reasonable jury could find that they lacked probable cause to arrest him for violating 720 ILCS 5/24-1.1(a). Doc. 68 at 9-10; Doc. 76 at 8. That statute makes it "unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon … or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of [Illinois] or any other jurisdiction."

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006); *see also Cook v. O'Neill*, 803 F.3d 296, 301 (7th Cir. 2015). "A police officer has probable cause to arrest a suspect if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that the suspect has violated the law." *D.Z. v. Buell*, 796 F.3d 749, 755 (7th Cir. 2015). "Probable cause is a common-sense determination, measured under a reasonableness standard. … It is an objective test, based upon factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Humphrey v. Staszak,* 148 F.3d 719, 726 (7th Cir. 1998) (internal quotation marks omitted). Moreover, "even if probable cause is lacking with respect to an arrest, an officer is entitled to qualified immunity if his subjective belief that he had

probable cause was objectively reasonable. Thus, when a defense of qualified immunity has been raised, [a court must] ask whether the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable existed. In other words, [a court asks] whether the officer had 'arguable' probable cause." *D.Z.*, 796 F.3d at 755 (internal citations and quotation marks omitted).

It is undisputed that Chachere was a felon. Even where, as here, a felon is not found in "actual possession" of a weapon, he can still be guilty of unlawfully possessing a firearm in violation of 720 ILCS 5/24-1.1(a) if he had "constructive possession" of the firearm. *People v. Spencer*, 965 N.E.2d 1135, 1141 (Ill. App. 2012). "Constructive possession may be proved if the defendant controlled the premises where [the contraband was] found," and habitation "in or rental of the premises where [the contraband was] discovered is sufficient evidence of control to constitute constructive possession." *People v. Blue*, 799 N.E.2d 804, 813-14 (Ill. App. 2003); *see also People v. Givens*, 934 N.E.2d 470, 484 (Ill. 2010) (noting that proof "that a defendant had control over the premises where [contraband was found] … gives rise to an inference of knowledge and possession of the [contraband]"); *People v. Maldonado*, 35 N.E.3d 1218, 1224-28 (Ill. App. 2015); *Spencer*, 965 N.E.2d at 1141; *People v. Cunningham*, 723 N.E.2d 778, 782 (Ill. App. 1999); *People v. Crowder*, 2016 IL App (1st) 140252-U, at ¶ 29 (Ill. App. 2016). Mail addressed to an individual can be "used to support an inference that [a] defendant controlled the location where … contraband was recovered regardless of whether the defendant was present at the time of the seizure." *Maldonado*, 35 N.E.3d at 1225. And "constructive possession of contraband can be established even where possession is joint or others have access to the area where the contraband is recovered." *Id.* at 1228; *see also People v. Hill*, 589 N.E.2d 1097, 1088-89 (Ill. App. 1992); *People v. Williams*, 424 N.E.2d 1234, 1236-37 (Ill. App. 1981).

The summary judgment record makes clear that the officers reasonably could have believed that Chachere constructively possessed the firearms recovered from his home. The officers were told that Chachere was the only person permitted in the home and that there were guns present. During their search, the officers located mail linking Chachere to the home. And upon Chachere's arrival at the scene, the officers discovered that his identification listed 7646 South Perry Avenue as his address. This evidence more than sufficed to support a reasonable inference that Chachere had control over the residence and thus that he constructively possessed any firearms found therein in violation of 720 ILCS 5/24-1.1(a).

Chachere contends that the fact that he informed the officers upon his arrival that the two individuals they had detained also lived at the home, which brought the number of residents (and potential owners of the firearms) to three, alters the probable cause analysis. According to Chachere, because the officers are, in effect, "rely[ing] on a claim of constructive possession, a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the object," the Seventh Circuit's decision in *United States v. Griffin*, 684 F.3d 691 (7th Cir. 2012), requires that they demonstrate a "substantial connection between [him] and the contraband" given that he "jointly occupie[d]" the home with others. Doc. 72 at 11 (quoting *Griffin*, 684 F.3d at 697).

It is true that *Griffin* held that the defendant there could not be convicted of felon-in-possession under 18 U.S.C. § 922(g)(1) because the government could not establish that the defendant, who jointly occupied the home where the gun was found, had a "'substantial connection' … [with] the contraband." 684 F.3d at 697. It also is true that the Seventh Circuit has held that 720 ILCS 5/24-1.1(a) is "clearly the state law counterpart to § 922(g)(1)." *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 502 (7th Cir. 2008). Still, there is no indication that

13

Illinois courts have adopted *Griffin*'s requirement that a "substantial connection" exist between the defendant and the firearm itself—as opposed to between the defendant and the residence where the firearm is found—when evaluating whether a defendant constructively possessed a firearm. To the contrary, the Appellate Court of Illinois has held that "habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession" under 720 ILCS 5/24-1.1(a). *Spencer*, 965 N.E.2d at 1141; *see also People v. Brown*, 2015 IL App (1st) 122581-U, ¶ 17 (Ill. App. June 30, 2015).

In any event, *Griffin* addresses the evidence necessary *at trial* to establish *beyond a reasonable doubt* that an individual constructively possessed a firearm, not the evidence necessary *upon arrest* to establish *probable cause* of constructive possession. 684 F.3d at 694. *Griffin* therefore does not govern whether the officers here had probable cause to believe that Chachere constructively possessed the firearms found in the home. *See Parker v. Duckworth*, 659 F. App'x 364, 367 (7th Cir. 2016) ("None of this was conclusive proof that Parker was guilty, but it provided probable cause."); *Beal v. Skaff*, 418 F.2d 430, 433 (7th Cir. 1969) ("While probable cause means more than a bare suspicion, it need not constitute evidence sufficient to convict."). And for the reasons given above, even if the officers were compelled to trust Chachere's word that two other persons resided at the home, the officers could reasonably have believed that he constructively possessed the firearms located there. Moreover, at the very least, the circumstances facing the officers gave rise to arguable probable cause because they could reasonably have believed that they had probable cause to arrest Chachere, entitling them to qualified immunity.

The officers accordingly are entitled to summary judgment on the false arrest claim.

### III. Chachere's Pretrial Detention

For many years, Seventh Circuit precedent barred plaintiffs from bringing Fourth Amendment claims for wrongful post-arraignment, pretrial detention; as the Seventh Circuit explained, "once detention by reason of arrest turns into detention by reason of arraignment—once police action gives way to legal process—the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes a claim of malicious prosecution violative of due process." *Llovet v. City of Chicago*, 761 F.3d 759, 763 (7th Cir. 2014). Last year, however, the Supreme Court held in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), that a plaintiff could state a "Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention," where the time he spent in detention was "unsupported by probable cause." *Id*. at 919. Chachere alleges that his detention in Cook County Jail for four months following his arrest violated the Fourth Amendment because Deering lacked probable cause "to sign criminal complaints charging [him]" with violating 720 ILCS 5/24-1.1(a), the felon-in-possession statute, and 720 ILCS 5/24-1.7(a), which provides that a person "commits the offense of being an armed habitual criminal if he … receives sells, possesses or transfers any firearm after having been convicted a total of 2 or more times [of certain offenses]." Doc. 72 at 9; *see* Doc. 68 at 3; Doc. 69 at 58.

Defendants contend that because *Manuel* "confirms a right to be free from detention absent probable cause," it follows that "probable cause would be a bar to any such claim." Doc. 68 at 9. They are correct. The plaintiff in *Manuel* alleged that his 48-day pretrial detention violated the Fourth Amendment because it "was based solely on false evidence, rather than supported by probable cause." 137 S. Ct. at 917. In holding that the plaintiff stated a viable claim, the Supreme Court reasoned that the "Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause," which occurs not only "when the

15

police hold someone without any reason before the formal onset of a criminal proceeding," but also when "legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated *solely* on a police officer's false statements." *Id.* at 918 (emphasis added). After all, in the latter situation, a "person is confined without constitutionally adequate justification," and while "[l]egal process has gone forward … it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id.* at 918-19.

*Manuel* teaches that pretrial detention unsupported by *any* probable cause—for example, where, as in *Manuel*, the *only* basis for the plaintiff's detention was fabricated evidence—violates the Fourth Amendment. Chachere alleges that the officers fabricated evidence against him—namely, that he admitted to the officers upon arriving at the scene that the firearms were his. However, that evidence was not the only basis for the charges against Chachere and his resulting detention; rather, as shown above, the officers had probable cause to arrest Chachere based solely on the reasonable belief that, as the lone resident or one of three residents of the home, he had at least constructive possession of the firearms found during the search. Because the officers had probable cause to arrest Chachere without regard to the fabricated evidence, and because Chachere does not even attempt to argue that the probable cause inquiry for his wrongful arrest claim differs from the inquiry for his wrongful detention, the officers are entitled to summary judgment on the Fourth Amendment pretrial detention claim.

IV. **Fabrication of Evidence**

Chachere alleges that the officers violated his Fourteenth Amendment due process rights by fabricating his statements that the firearms belonged to him. This type of claim is called a "*Whitlock*" claim because in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), the Seventh Circuit held that "a police officer who manufactures false evidence against a criminal

16

defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Id.* at 580.

Defendants' only ground for summary judgment on the *Whitlock* claim—they do not present any argument for qualified immunity on that particular claim, Doc. 68 at 11-13; Doc. 76 at 11-12, thereby forfeiting the point—is that the dismissal of the charges against Chachere before trial forecloses the claim. Doc. 68 at 11. The undersigned judge held two years ago, based on *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010), and *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009), that a plaintiff who suffered pretrial detention but who was not convicted has no viable *Whitlock* claim. *See White v. City of Chicago*, 149 F. Supp. 3d 974, 978-79 (N.D. Ill. 2016) (noting that *Fox* and *Brooks* held, "in circumstances where [a] plaintiff had not been convicted," that an evidence fabrication claim "sounded in malicious prosecution and thus could not be brought under the Due Process Clause"). That holding cannot stand in light of the Seventh Circuit's recent decision in *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018), which held that an individual who was prosecuted, but not convicted, for murder could assert a *Whitlock* claim against officers who filed a false "police report asserting that [he] had made incriminating statements to them when he was being transported after his interrogation." *Id*. at 838, 843-44; *but cf. Manuel*, 137 S. Ct. at 918-19 ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that

reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.") (citations omitted). *Hurt* therefore defeats Defendants' sole argument for summary judgment on the *Whitlock* claim.

V.      **State Law Malicious Prosecution Claim**

The elements of malicious prosecution under Illinois law are: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceeding were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. 1996); *see also Johnson v. Saville*, 575 F.3d 656, 659-61 (7th Cir. 2009). Chachere's malicious prosecution claim cannot satisfy the second element because, as shown above, the officers had probable cause to charge him with unlawful possession of a firearm.

Nor can Chachere establish the fourth element, that the state criminal proceedings were terminated in his favor. To be favorable, a termination must be "indicative of the innocence of the accused." *Swick*, 662 N.E.2d at 1242. To determine whether a termination is indicative of the accused's innocence, a court examines the circumstances, not the form or title, of the disposition of the criminal charges. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (Ill. 1997). The dismissal of charges is not indicative of innocence if it "is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the

institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 662 N.E.2d at 1243.

The charges against Chachere were dismissed *nolle prosequi* after the state trial court "granted [Chachere's] motion to quash and suppress evidence on the grounds that [any] exigent circumstances had diminished" by the time the officers entered the home. Doc. 71 at ¶¶ 39-40. Given these circumstances, no reasonable jury could find that the termination of the criminal proceedings against Chachere was indicative of his innocence. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (holding that the malicious prosecution plaintiff could not show favorable termination where the prosecutor dismissed the charges *nolle prosequi* after the state court granted the plaintiff's motion to suppress certain statements); *Johnson v. City of Chicago*, 2016 WL 5341810, at *5 (N.D. Ill. Sept. 23, 2016) (same, where the charges were dismissed *nolle prosequi* after trial judge suppressed evidence that a firearm was found on the defendant's person); *Horan v. City of Chicago*, 2010 WL 2836729, at *8 (N.D. Ill. July 16, 2010) (same, where "the narcotics found in plaintiff's apartment were discovered during an improper search and could not be used as evidence against plaintiff"); *Johnson v. Arroyo*, 2010 WL 1195330, at *3 (N.D. Ill. Mar. 22, 2010) ("[A] dismissal following suppression of evidence for a technical reason [that did not call into question the reliability of the evidence or pertain to culpability] is not a reason indicative of innocence, so it cannot support a malicious prosecution claim.").

## VI. Indemnification Claim Against the City

Defendants move for summary judgment on Chachere's indemnification claim against the City. The Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1 *et seq.*, provides in relevant part that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745

19

ILCS 10/2-109. As shown above, Chachere's Fourth Amendment unlawful search and Fourteenth Amendment evidence fabrication claims against the officers survive summary judgment. The indemnification claim accordingly survives as well.

## Conclusion

Defendants are granted summary judgment as to Chachere's Fourth Amendment false arrest, Fourth Amendment unlawful detention, and state law malicious prosecution claims, but not as to his Fourth Amendment unlawful search, Fourteenth Amendment fabricated evidence, and state law indemnification claims. The surviving claims will proceed to trial.

February 28, 2018

_____
United States District Judge